IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA KOHUT BURDGE, | : | 09-cv-1294 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| DISTRICT ATTORNEY DAVID ARNOLD, POLICE CHIEF JOHN LEAHY, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

### August 5, 2010

**I.     INTRODUCTION**

Before the Court in this civil rights action is Defendants David Arnold ("Arnold") and John Leahy's ("Leahy") (collectively, "Defendants") Motion to Dismiss Plaintiff Andrea Kohut Burdge's ("Plaintiff" or "Burdge") Second Amended Complaint ("the Motion"), filed on May 21, 2010. (Doc. 29). The Motion has been fully briefed by both parties and thus is ripe for disposition. (Docs. 30-31). For the reasons articulated in this Memorandum, the Court will grant the motion and dismiss the Second Amended Complaint. And appropriate Order shall enter.

**II.    PROCEDURAL HISTORY**

1

Plaintiff initiated this action with the filing of a Complaint on July 7, 2009. Plaintiff subsequently filed an Amended Complaint on July 9, 2009. (Doc. 2). The Amended Complaint was substantively identical to original complaint, except that in the Amended Complaint the last name of Plaintiff and her husband was spelled properly and two alleged dates were changed. Plaintiff alleged in the Amended Complaint that Defendants violated a litany of her First Amendment Rights. (*See generally* Doc. 2). Defendants filed a Motion to Dismiss on September 8, 2009, asserting that Plaintiff failed to state a claim upon which relief can be granted. (*See generally* Doc. 9). On January 8, 2010, the Court issued a Memorandum and Order ("the January 8, 2010 Order"), granting in part and denying in part Defendants' Motion to Dismiss. Specifically, the Court dismissed Plaintiff's First Amendment claims regarding her right to associate and her right to petition the Government for grievances and granted Plaintiff leave to amend her First Amendment retaliation claims. (*See generally* Doc. 19).

After the January 8, 2010 Order, Plaintiff first filed a Motion to Vacate (or Reconsider) the Order. (Doc. 24). After we found that there were no asserted grounds for reconsideration, we denied the motion (Doc. 27) and Plaintiff subsequently filed the instant Second Amended Complaint (Doc. 28). The substance and allegations of the Second Amended Complaint (detailed below)

display very little new material and contain information relating to the claims that were dismissed in the January 8, 2010 Order. The only claim remaining is a retaliation for protected speech claim, asserted under the First Amendment.

### III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss.

*Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. BACKGROUND

In accordance with the standard of review, the following well-pleaded facts and inferences are derived from the Second Amended Complaint (Doc. 28) and are viewed in the light most favorable to the Plaintiff. Also in accordance with the standard of review we need not, and thus do not, accept or consider the factual allegations that constitute nothing more than "legal conclusions" or "naked assertions".

Plaintiff formerly worked as a Lebanon County Detective. Defendant Arnold was the District Attorney of Lebanon County, and Defendant Leahy was

employed by the Lebanon County Detective Bureau. (Doc. 2 ¶¶ 7-8). Plaintiff's husband, Michael Burdge, was at all relevant times the Chief of Police of Annville Township, located within Lebanon County. (Doc. 28 ¶¶ 9-10). Plaintiff alleges that her husband was "disliked" by Defendants and that both he and Annville Township "were frequently the brunt of critical comments and disparaging remarks in the Lebanon County DA's office." (Doc. 28 ¶ 11).

On or about December 30, 2007, the Chief of Police of another township called Michael Burdge to inform him that an computer technician in Lebanon County "had been involved with a large amount of illicit drugs." (Doc. 28 ¶ 12). According to Plaintiff "law enforcement officials were concerned because [the named technician, Derrick Black] dealt with security sensitive law enforcement functions" and had access to networks used by Lebanon County law enforcement. (Doc. 28 ¶ 14-15). According to Plaintiff, she relayed this concern to Leahy and asked what the Lebanon Police "were going to do about Derrick Black." (Doc. 28 ¶ 18). Apparently Leahy's response was that "it depends if Black is charged with a felony or a misdemeanor." (Doc. 28 ¶ 19). Plaintiff believed it was best to "check with the state police" because she had "serious concerns because of her responsibilities." (Doc. 28 ¶¶ 19-20).

According to Plaintiff, Leahy and Arnold apparently decided not to involve

6

the state police in the investigation and Plaintiff documented that denial. (Doc. 28 ¶¶ 39-40). On January 7, 2008, another individual called the Pennsylvania State Police, reported the incident, and gave them Plaintiff's name and phone number as "the necessary Lebanon County contact." (Doc. 28 ¶ 43). Plaintiff alleges that when she relayed this information to Leahy he "turned bright red and his facial expression indicated intense anger." (Doc. 28 ¶ 44). On that same day, the Lebanon County Association of Police Chiefs, headed by Plaintiff's husband, met with the Lebanon County Commissioners regarding Derrick Black. (Doc. 28 ¶ 45). Leahy was apparently upset after the meeting. (Doc. 28 ¶ 47).

On January 10, 2008 Defendants Arnold and Leahy held a meeting with Plaintiff where they told her about contentious issues they had with her husband and that she "violated confidentiality." (Doc. 28 ¶¶ 48-50). Leahy then told Plaintiff that "she was to be out of her office by the end of the day." (Doc. 28 ¶ 52). When questioned, Leahy informed Plaintiff that she was being terminated because of her husband "running at the mouth" and her desire to call the state police. (Doc. 28 ¶¶ 54-55). Plaintiff reminded Leahy that "it was her responsibility to complain to the state police." (Doc. 28 ¶ 55). Whether Plaintiff was actually fired on that date, however, is not expressly stated in the Second Amended Complaint, so we will presume that she was.

## V. DISCUSSION

As we previously iterated in the January 8, 2010 Order: In order to prevail on a retaliation claim under the First Amendment, an employee must first show that the speech in question was, as a matter of law, protected. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). While "[a] public employee has a constitutional right to speak on matters of public concern without fear of retaliation," *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001), the employee must also speak as a citizen to enjoy First Amendment protection of that speech. *Connick v. Meyers*, 461 U.S. 138, 147 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement ..." *Hill,* 455 F.3d at 242 (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). Further, a public employee must be speaking as a private citizen - not "pursuant to [his] official duties." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958 (2006)).

If the speech is protected, then a plaintiff must also show that the "protected activity was a substantial factor in the alleged retaliatory action. *Id.* at 241; *see also Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). We ultimately find that Plaintiff has again failed to allege facts sufficient to support a claim of retaliation for protected speech.

First, it is evident from applicable case law that to assert a First Amendment claim regarding retaliation for protected speech, the speech at issue must involve matters of public concern. *See Garcetti v. Ceballos*, 547 U.S. 510 (2006). Aside from bare conclusions,[1] Plaintiff does not plead any allegations or facts to reasonably demonstrate those conclusions, namely that her "speech" was a matter of public concern. Plaintiff alleges that law enforcement were concerned because Derrick Black "dealt with security sensitive law enforcement functions." Although criminal activity of a public employee could, in some instances, be a matter of public concern, Plaintiff alleges no facts that would support such an inference; rather, as previously mentioned, the Second Amended Complaint demonstrates that the incident was a matter of law-enforcement concern. Plaintiff does make a few allegations that, if in any way well-pleaded or supported, could demonstrate issues of public concern: namely, her allegations that the Lebanon Police attempted to "cover up" official misconduct or acted in a way that amounts to police corruption. However, Plaintiff first fails to allege that the incident regarding Derrick Black was

---

[1] For example, Plaintiff baldly asserts "Black's misconduct was/is a matter of public concern as is any police corruption. . ." and "cover-ups of official misconduct is [*sic*] a matter of public concern on its face . . ." While we agree that such "cover-ups" of official misconduct are a matter of public concern, Plaintiff has not alleged any facts that would lead to a reasonable inference that such "cover-ups" occurred.

9

in any way official misconduct.² Plaintiff advances no claims that Derrick Black's investigation for being "involved with drugs" was in any way related to, or affected, his position as a "computer technical person". Further, although Plaintiff indiscriminately uses the term "police corruption", (which could certainly be a matter of public concern), she offers no facts to demonstrate any "depravity, perversion, or taint; . . . impairment of integrity, virtue, or moral principle" nor does she allege that any Defendant chose not to prosecute Derrick Black with "an intent to give some advantage inconsistent with official duty and the rights of others . . ."³ The Second Amended Complaint, in fact, is bereft of any allegations that could demonstrate that, based on the "content, form, and context of [her] statements]", *Hill,* 455 F.3d at 242 (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)), her "speech" *to her supervisors* involved a matter of public concern.

Further, and more importantly, even assuming that the incident regarding Derrick Black was in fact a matter of public concern, Plaintiff must also allege that

---

²"Official misconduct" is defined, in the legal sense, as "[a] public officer's corrupt violation of assigned duties by malfeasance, misfeasance, or nonfeasance." BLACK'S LAW DICTIONARY 1019 (8th ed. 2004).

³BLACK'S LAW DICTIONARY 371 (8th ed. 2004). We note that, of course, a plaintiff could state a cognizable claim without adhering to rigid legal definitions; however, definitions of the legal terms that Plaintiff seems to be overabundantly utilizing are instructive to demonstrate that Plaintiff is asserting bald legal conclusions without pleading supporting facts.

she was speaking as a private citizen in order to state a cognizable claim. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Plaintiff also utterly fails to allege that she was speaking as a private citizen rather than as a public official, and in fact expresses just the opposite. Indeed, the Second Amended Complaint is rife with allegations that the incident involving Derrick Black was a matter of *police concern* and thus, as a *police official*, she was aptly involved. For example, Plaintiff tellingly alleges that she had "no reason to be concerned about any issues outside of expected law enforcement concerns." (Doc. 28 ¶ 18). Further, she asserts that if Black had compromised the law enforcement networks, she "would have serious concerns because of her responsibilities", specifically because she was the Terminal Agency Coordinator in charge of two of the criminal computer networks. (Doc. 28 ¶ 21). Given that this is Plaintiff's second attempt at drafting the Complaint, we do not believe that such allegations are the unfortunate result of irresponsible and sloppy drafting; but instead find them to be demonstrative of the fact that Plaintiff was indeed acting pursuant to her official responsibilities as a law-enforcement officer. Although Plaintiff highlights that the Pennsylvania State Police was nowhere in her chain-of-command and, at one point, couches the duty she felt as "moral", the pleadings simply do not demonstrate, under any reasonable reading, that Plaintiff was "speaking" and acting as anything

11

other than a police official.  Thus, Plaintiff fails to state a claim for relief in that respect, as well.

## VI. CONCLUSION

We find that Plaintiff fails to state a retaliation claim because, under any reasonable reading of the Second Amended Complaint, Plaintiff fails to allege that she spoke on a matter of public concern or that she spoke as a private citizen rather than as a public official.  As Plaintiff was already granted leave to amend the Complaint with clear directives from the Court, we find that an attempt amend the Second Amended Complaint and properly assert a claim would be an exercise in futility and needlessly waste the resources of the Court and the parties.  Thus, we shall grant the Motion, dismiss Plaintiff's Second Amended Complaint with prejudice, and close the case.  An appropriate Order shall enter.